UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JERRY KING, | Civil Action No. 4:22-cv-1720-JD-TER |
| Plaintiff, | |
| -vs- | |
| | **ORDER** |
| HONDA TRADING and PEOPLE READY TEMP AGENCY, | |
| Defendants. | |

## I.   INTRODUCTION

Plaintiff originally filed this action pro se, alleging claims of employment discrimination and retaliation based on race pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq. Two individual defendants have already been dismissed. See Order (ECF No. 48). The remaining Defendants have filed Motions to Dismiss (ECF Nos. 35, 39). Plaintiff subsequently retained counsel and has filed a Motion to Amend (ECF No. 51) his Complaint and attached a proposed Amended Complaint. Defendants oppose the motion. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(g), DSC.

## II.   DISCUSSION

Plaintiff seeks leave to amend his complaint because he has since retained legal counsel who can fully articulate Plaintiff's legal claims and notes that Defendants will not be prejudiced by the amendments nor will the amendments cause unnecessary delay. The proposed Amended Complaint adds factual allegations regarding receipt of the EEOC's Notice of Right to Sue letter as well as new

factual allegations related to the COVID-19 pandemic. It also includes a new cause of action for wrongful termination in violation of public policy. Defendants argue that Plaintiff's motion to amend should be denied on the basis of futility because (1) as argued in their motions to dismiss, the present action is untimely because Plaintiff failed to file it within ninety days of receipt of the EEOC's Notice of Right to Sue, (2) Plaintiff failed to exhaust his administrative remedies with respect to the new allegations regarding COVID-19, and (3) Plaintiff fails to state a claim for wrongful termination in violation of public policy.

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be given freely when justice so requires. "Although leave to amend should be freely given when justice so requires, ... [a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010) (alteration, citations, and internal quotation marks omitted). "A proposed amendment is futile when it is clearly insufficient or frivolous on its face ... [or] if the claim it presents would not survive a motion to dismiss." Save Our Sound OBX, Inc. v. N.C. Dep't of Transp., 914 F.3d 213, 228 (4th Cir. 2019) (citation and internal quotation marks omitted).

Because the futility determination asserted by Defendants requires the court to determine whether the proposed amendment would survive a motion to dismiss, the standard of review applicable to such motions is necessary. A Rule 12(b)(6) motion examines whether Plaintiff has stated a claim upon which relief can be granted. The United States Supreme Court has made clear that, under Rule 8 of the Federal Rules of Civil Procedure, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

> Expounding on its decision in Twombly, the United States Supreme Court stated in Iqbal:
>
> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 556 U.S. at 677-78 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir.2003).

First, Defendants argue that Plaintiff should not be allowed to amend his complaint because the complaint is untimely. "Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the [Equal Employment Opportunity Commission (EEOC) ]." Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir.2000); see also 42 U.S .C. § 2000e–5(f)(1). The EEOC must then decide whether it will bring a claim in federal court or if it will issue a "right-to-sue" letter to the claimant, "which letter is essential to initiation of a private Title VII suit in federal court." Davis v. North Carolina Dep't of Corrections, 48 F.3d 134, 136–37 (4th Cir.1995). Upon receipt of the right to sue letter from the EEOC, Plaintiff has 90 days within which to file a civil action raising federal discrimination claims. 42 U.S.C. § 2000e–5(f)(1) and 29 U.S.C. § 626(e).

Plaintiff attached to his original complaint a copy of the Notice of Right to Sue letter he

received from the EEOC, which is dated February 25, 2022.  The Notice states "**your lawsuit must be filed WITHIN 90 days of your receipt of this notice.**  Receipt generally occurs on the date that you (or your representative) view this document." Determination and Notice of Rights (ECF No. 1-1).  There are no allegations in his original complaint setting forth the date Plaintiff received the Notice.  Plaintiff filed the present action on June 1, 2022.  As argued by Defendants in their motions to dismiss, and relied upon in responding to Plaintiff's motion to amend,

> Plaintiff's 90-day period, along with a 3-day grace period allotted for the mailing of his Complaint, would have required Plaintiff to file his lawsuit by May 29, 2022. Given that May 29th fell on a Sunday, and that the following day was a holiday, Plaintiff's official filing deadline was May 31, 2022. Plaintiff did not file his Complaint until June 1, 2022, one day after his filing deadline.

Motion to Dismiss (ECF No. 35) p. 4.  See  Ish v. Arlington Cnty. Va., 918 F.2d 955 (4th Cir. 1990) (noting that, when the date of receipt of the right to sue notice is unknown or disputed, the 90-day period begins to run three days after the mailing date).  However, the proposed amended complaint includes the allegation that Plaintiff received the EEOC Notice on March 5, 2022. Proposed Am. Compl. ¶ 7 (ECF No. 51-1).  At this stage of the litigation, the court must accept all well-pleaded allegations as true.  Thus, based on the allegations in the proposed amended complaint, Plaintiff's date of receipt of the EEOC Notice is not unknown or in dispute and, thus, the 3-day grace period upon which Defendants rely in calculating the timeliness of Plaintiff complaint is inapplicable. Based on the allegations in the proposed amended complaint, the deadline for filing the present action was June 3, 2022. As stated above, Plaintiff filed the present action on June 1, 2022.  Thus, Plaintiff's proposed amended complaint would not be futile based on the timeliness argument raised by Defendants.

Defendants next argue that the proposed amended complaint would be futile because Plaintiff failed to exhaust his administrative remedies with the EEOC regarding the new, COVID-19

allegations. The charge of discrimination that is filed with the EEOC "defines the scope of [a plaintiff's] subsequent right to institute a civil suit." Smith v. First Union National Bank, 202 F.3d 234, 247 (4th Cir.2000). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII suit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996).

> Plaintiff sets forth the following facts in his charge of discrimination:
>
> I was harassed, intimidated, and disciplined on or about September 15, 2020. The stated reason for the disciplinary action was for "gossiping" and that I needed to "pick up the pace and stop visiting." I deny these allegations and contend that another employee (white) committed offenses and violated policy, including having a cell phone in the work area, but was not disciplined. I complained and told my employer I was going to sue them. I contend I was treated less favorably because of my race.
>
> I was discharged on or about January 25, 2021. Respondent alleges that I was not performing up to standards, had a "negative attitude" and "talked down" to other employees. During a conversation, an employee (white/female/younger) referred to me and another black employee as "you people." I complained and ask[ed] if she was calling me a "n*gger" which is what I interpreted her use of the term "you people" to mean. She refused to answer my question, opting instead to report the matter to upper management. I contend that I was discharged because of my age, race, sex, and in retaliation for questioning my coworker's intent by her use of the term "you people" and for my prior complaint and threat of a law suit.

Charge of Discrimination (ECF No. 54-1). Plaintiff alleges in the proposed amended complaint:

> 15. Plaintiff felt he was being exposed to at risk workers and voiced his concern to representatives of both Defendants.
>
> . . .
>
> 17. Plaintiff had to be tested for COVID during his employment at Honda and was berated by his PeopleReady supervisor for working; however when a Caucasian co-worker (Ashley) actually tested positive for COVID, she was allowed to return to work.
> 18. When Plaintiff made complaints and inquiries about being exposed to COVID and unequal application of work rules, he was terminated from the Honda site.

Proposed Am. Compl. ¶¶ 15, 17-18.

Because "lawyers do not typically complete the administrative charges," courts must "construe them liberally" in favor of the plaintiff. Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005) (citing Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll., 848 F.2d 457, 460 (4th Cir. 1988)); see also Sydnor v. Fairfax Cnty., 681 F.3d 591, 594 (4th Cir. 2012) ("[T]he exhaustion requirement should not become a tripwire for hapless plaintiffs."). Where there is a variance between the allegations in the charge and the formal complaint, a court must determine "whether a plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same[.]" Sydnor, 681 F.3d at 595 (citing Smith, 202 F.3d at 247). A plaintiff's claims do not reasonably relate, and thus remain unexhausted, where they "deal[ ] with different time frames, actors, and conduct" such that they essentially "describe two different cases." Chacko, 429 F.3d at 511-12.

Plaintiff's charge of discrimination references harassment and discipline on September 15, 2020, and termination on January 25, 2021, and the allegations in his complaint regarding COVID necessarily occurred within approximately the same time frame because Plaintiff alleges that he only worked at the Honda location from August 25, 2020 to January 27, 2021. Proposed Am. Compl. ¶ 16. Further, both the charge of discrimination and the proposed new allegations regarding COVID-19 allege the same discriminatory conduct–discrimination and retaliation, resulting in termination, on the basis of race and sex. Plaintiff's new allegations as they relate to Title VII[1] essentially add an additional instance where Plaintiff asserts a white coworker was treated more favorably, which is similar to other claims raised in his charge. The new allegation alleges that his termination

---

[1]Some of the proposed new COVID-19 allegations are related to his wrongful discharge in violation of public policy claim, which is discussed below, and not necessarily to his Title VII discrimination and retaliation claims.

stemmed from complaints of unequal treatment. Thus, the allegations in the proposed amended complaint are such that would be developed from a reasonable investigation of the charge of discrimination. Accordingly, Plaintiff amending his complaint to add these allegations would not be futile.

Finally, Defendants argue that it would be futile to allow Plaintiff to amend his complaint to allege a state law claim for wrongful termination because the proposed allegations fail to give rise to such a claim. Generally speaking, South Carolina law allows an employer to discharge an employee without incurring liability for good reason, no reason, or bad reason. Culler v. Blue Ridge Elec. Coop., 309 S.C. 243, 245, 422 S.E.2d 91, 92 (1992). However, the South Carolina Supreme Court has recognized a "public policy" exception to this doctrine. Ludwick v. This Minute of Carolina, Inc., 287 S.C. 219, 225, 337 S.E.2d 213, 216 (1985). In Ludwick, the court held that an employee has a tort cause of action for wrongful discharge where there is a retaliatory discharge of the at-will employee in violation of a clear mandate of public policy. Id. The public policy exception clearly applies in cases where the employer either (1) requires the employee to violate the law, or (2) the reason for the employee's termination is itself a violation of criminal law. Lawson v. South Carolina Dep't of Corrections, 340 S.C. 346, 350, 532 S.E.2d 259, 260 (2000). However, "[w]hile the public policy exception applies to situations where an employer requires an employee to violate the law or the reason for the termination itself is a violation of criminal law, the public policy exception is not limited to these situations." Barron v. Labor Finders of S.C., 393 S.C. 609, 614, 713 S.E.2d 634, 636–37 (2011). Thus, "an at-will employee may have a cause of action for wrongful termination even if the discharge itself did not violate criminal law or the employer did not require the employee to violate the law." Id. at 614–15, 713 S.E.2d at 637. Nevertheless, the public policy exception "has not yet been extended beyond [these two situations]." McNeil v. S.C. Dep't of Corr.,

404 S.C. 186, 192, 743 S.E.2d 843, 846 (Ct.App.2013); see also Taghivand v. Rite Aid Corp., 411 S.C. 240, 243, 768 S.E.2d 385, 387 (2015) ("While we have made clear that the exception is not limited to these situations, we have specifically recognized no others." (internal quotation marks omitted)).

In the proposed amended complaint, Plaintiff alleges that Defendants terminated Plaintiff for making inquiries and complaining to Defendants about their failure to abide by state and federal guidance regarding COVID-19 and, thus, creating unsafe working conditions. Proposed Am. Compl. ¶¶ 15, 18, 32-38. Defendants argue that Plaintiff has not alleged either of the two clearly recognized circumstances for wrongful discharge–that the employer required the employee to violate the law or that the reason for his termination was a violation of criminal law. Further, courts have held on more than one occasion that a plaintiff could not make a claim for wrongful termination in violation of public policy based upon internal reports of alleged violations of laws or regulations. In Desmarasis v. Scientific Research Corporation, 145 F.Supp.3rd 595 (D.S.C. 2015), the plaintiff asserted a cause of action for a wrongful discharge in violation of public policy and alleged "the unjust wrongful discharge and termination of Plaintiff's employment with the Defendant was the response of the Defendant, their agents and servants, to Plaintiff's continuing complaints regarding Defendants' illegal actions and violations of state law." Id. at 599. The plaintiff in Desmarasis complained internally about alleged violations of Federal Aviation Authority (FAA) regulations. Id. The court first found that the plaintiff did not "point to any law or other source that constitutes a clear mandate of public policy supporting the rights of employees to internally complain about alleged violations of FAA regulations," and noted that "a plaintiff's failure to identify the source of a clear mandate of public policy warrants dismissal." Id. (citing Riley v. S. Care, Inc., No. 3:13–cv–00357, 2013 WL 1809788, at *6 (D.S.C. Apr. 29, 2013) ("Plaintiff does not direct the court to any other source of a clear mandate of public policy. Under these circumstances, the court finds that Plaintiff's

claim for wrongful termination in violation of public policy fails as a matter of law."); Washington v. Perdue Farms, Inc., No. 4:07–cv–3552, 2009 WL 386926, at *12 (D.S.C. Feb. 13, 2009) ("The Plaintiff did not cite any case law to support her theory that 'requesting to see the doctor' is a public policy of South Carolina."); Smalley v. Fast Fare, Inc., No. 8:88–cv–2185–3, 1988 WL 220237, at *2 (D.S.C. Dec. 22, 1988) ("[I]n the absence of an appropriate declaration by the South Carolina courts or the General Assembly, the Plaintiff has failed to establish any public policy of South Carolina allegedly violated by the Defendant."). Likewise, in Greene v. Quest Diagnostics Clinical Labs., Inc., 455 F.Supp.2d 483, 490 (D.S.C.2006), this court addressed whether to extend the recognized bounds of the public policy exception to situations in which an employee internally reports alleged illegal conduct to their superiors. The court found that the plaintiff failed to point to "any law or other source that constitutes a clear public policy supporting the rights of employees to internally report potentially illegal conduct to their superiors." Id.

As stated above, Plaintiff's proposed wrongful termination in violation of public policy claim is based on Plaintiff's allegations that his employment was terminated in retaliation for his internal reports regarding violations of state and federal COVID-19 guidance. Plaintiff has not identified a clear mandate of public policy "supporting the rights of employees to internally complain about alleged violations" of COVID-19 guidelines. See Desmarasis, 145 F.Supp.3rd at 599. Therefore, allowing the proposed cause of action for wrongful discharge in violation of public policy would be futile.

## IV.     CONCLUSION

For the reasons discussed above, Plaintiff's Motion to Amend (ECF No. 51) is **GRANTED in part and DENIED in part.** Specifically, Plaintiff's Motion is denied as to the claim for wrongful discharge in violation of public policy, but granted in all other respects. Therefore, the clerk's office is directed to file the proposed amended complaint attached to Plaintiff's motion. However, the

cause of action for wrongful discharge in violation of public policy is not to be considered part of the operative complaint and shall be considered stricken.[2]

**IT IS ORDERED.**

                                                  s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 25, 2023
Florence, South Carolina

---

[2] The Motion to Continue (ECF No. 25), Motions to Dismiss (ECF Nos. 35, 39) and Motion for Leave to File Sur-Reply (ECF No. 50) are **MOOT**.